UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: DEEPWATER HORIZON BELO CASES | Case No. 3:19cv963 |
| This Document Relates to: *Wesley Covert,* No. 3:21cv3287 *Jeffrey Lawrence,* No. 3:23cv59 *Taurus Lewis,* No. 3:22cv18637 *Gill McGee,* No. 3:18cv2364 | Judge M. Casey Rodgers Magistrate Judge Hope T. Cannon |

# ORDER

The Magistrate Judge has entered a Report and Recommendation ("R&R), ECF No. 733 (Master Docket), in the above-named Back-End Litigation Option ("BELO") cases,[1] recommending the exclusion of Plaintiffs' general causation experts under Federal Rule of Evidence 702 and *Daubert*;[2] the grant of a motion to strike; and the entry of summary judgment in favor of Defendants BP Exploration & Production, Inc. and BP America Production Company (collectively "BP"). The Plaintiffs filed timely objections pursuant to 28 U.S.C. § 636(b)(1), *see* ECF No.

---

[1] The Court assumes the parties' familiarity with the BELO context and basic facts of the Deepwater Horizon oil spill and resulting multidistrict litigation, which resolved in part through a Medical Benefits Class Action Settlement Agreement ("Settlement"). The Settlement provided a claim payment scheme for all class members who suffered an illness that was diagnosed by the Settlement cutoff date of April 16, 2012. The Settlement also established a separate litigation track for medical benefits class members who did not meet the Settlement cutoff date to litigate whether a Later-Manifested Physical Condition first diagnosed after the settlement date of April 16, 2012, was caused by exposure to chemicals originating from the spill and/or cleanup response activities.

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

738. BP responded, ECF No. 739, and has moved to strike new declarations attached to Plaintiffs' objections, ECF No. 740.

When reviewing a magistrate judge's R&R on a dispositive matter, the Court reviews *de novo* all aspects to which a party has specifically objected and "may accept, reject, or modify, in whole or in part, the findings or recommendations made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1245 (11th Cir. 2007) ("the district court is generally free to employ the magistrate judge's findings to the extent that it sees fit"). The undersigned has fully considered all objections *de novo* and concludes that they should be overruled and the R&R should be adopted.

Briefly summarized, the above-named Plaintiffs each suffer from chronic dermatitis or eczema,[3] allegedly caused by toxic chemicals they were exposed to during their cleanup work along the Gulf Coast of Florida after the *Deepwater Horizon* oil spill. Because their conditions were diagnosed after the cutoff date for claims eligible for payment under the Deepwater Horizon Medical Benefits Class Action Settlement Agreement in the multidistrict litigation ("MDL"), which is pending the Eastern District of Louisiana, Plaintiffs filed individual BELO suits to

---

[3] The terms dermatitis and eczema (atopic dermatitis) are often used interchangeably. According to Plaintiffs' expert, Dr. Michael D. Freeman, when the word eczema is used alone, it refers to a chronic skin disease. ECF No. 687–1 at 11.

Page 3 of 13

recover compensation for their injuries. *See supra* Note 2. These cases, along with several hundred others, were then transferred from the MDL to this District for litigation, and the Court selected three rounds of bellwether cases to proceed together through discovery. As noted by the Magistrate Judge, this group, which includes individuals alleging chronic dermal conditions, is the final group to proceed through expert discovery. In an effort to structure the expert work in a way that would present the causation issues efficiently and cost-effectively, the Court established a bifurcated procedure by which general causation would be addressed first.[4]

      Plaintiffs designated two general causation experts, whose qualifications are not challenged. Dr. Peter Elsner, who has expertise in dermatoxicology and epidemiology, was retained to confirm the diagnosis of each Plaintiff's dermal condition and offer a general causation opinion. In his opinion, exposure to petroleum compounds, dispersants, and aerosols that consist of petroleum hydrocarbons and dispersants may cause acute dermatitis which may develop into chronic dermatitis over time. Plaintiffs also designated Dr. Michael Freeman, a forensic epidemiologist, as a general causation expert. According to Dr. Freeman,

---

[4] All other BELO cases represented by the Downs Law Group that involve the same categories of alleged injuries (dermal) were stayed by consent of the parties pending resolution of the general causation issue and agree to be bound by the Court's ruling in the test cases. *See* ECF Nos. 613, 634 (Master Docket).

a general causal relationship exists between exposure to chemicals released into the environment during the spill and an increased risk of chronic eczema and dermatitis. Each expert applied epidemiology and considered the Bradford Hill factors.[5] Each also provided a rebuttal report.

BP challenged the reliability and helpfulness of the expert opinions and sought summary judgment, arguing Plaintiffs have not created a question of fact to sustain their burden on general causation. The Magistrate Judge recommended granting the motions, and Plaintiffs object, with new declarations from both experts.

Preliminarily, BP moves to strike the new declarations as untimely new disclosures filed without leave of court. Plaintiffs argue that the declarations are offered only as rebuttal intended to clarify alleged errors or misstatements within the R&R about the experts' testimony. *See* ECF No. 738–1, –2. The Court has discretion to consider new materials when ruling on objections to an R&R but declines to do so here. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009)

---

[5] The Bradford Hill factors include: "(1) temporal relationship; (2) strength of the association; (3) dose-response relationship; (4) replication of the findings; (5) biological plausibility; (6) consideration of alternative explanations; (7) cessation of exposure; (8) specificity of the association; and (9) consistency with other knowledge." *In re Abilify*, 299 F. Supp. 3d at 1307 (citing Michael D. Green et al., *Reference Guide on Epidemiology*, in Reference Manual on Scientific Evidence 599–600 ("Ref. Man.")). "No one factor is dispositive." *Id.* The Reference Manual indicates that drawing a causal inference "after finding an association and considering these factors" requires the exercise of "judgment and searching analysis, based on biology." Ref. Man. at 600.

(district courts retain final adjudicative authority and may exercise discretion in deciding whether to consider any new arguments raised in objections to a magistrate judge's report and recommendation or exercise discretion to decline to consider a new argument that was not first presented to the magistrate judge).  As Plaintiffs argue, these affidavits are more akin to additional legal argument than new disclosures, but Plaintiffs have ably presented their legal arguments within the objections.  Moreover, Plaintiffs' experts had ample time to clarify the record during their depositions and rebuttal reports.  The undersigned finds no need for further clarification of the record through additional evidence and declines to consider the new declarations.[6]

Under well-settled law in this Circuit, to succeed in this toxic tort context, Plaintiffs must show that a chemical or mixture of chemicals from the oil spill caused their conditions.  *See McClain v. Metabolife Int'l, Inc*., 401 F.3d 1233, 1239 (11th Cir. 2005; *see also In re Deepwater Horizon BELO Cases*, No. 3:19-963, 2020 WL

---

[6] BP's motion invokes Rule 26(a)(2)(D) and seeks sanctions under Rule 37(c) (authorizing sanctions for failure to timely disclose or supplement, which include prohibiting the disobedient party from relying on or excluding from evidence the new material or striking pleadings). Plaintiffs argue this is not a Rule 26 disclosure issue but pure rebuttal and that motions to strike are disfavored and frequently denied as time-wasters, citing Rule 12(f). The undersigned's decision rests solely on the Court's discretion to exclude evidence that was not before the Magistrate Judge and is nothing more than additional legal argument masquerading as expert opinion. Aside from the undersigned's decision not to consider the material, no sanction is necessary.

Page 6 of 13

6689212 at *8 (N.D. Fla. Nov. 4, 2020), *aff'd*, 2022 WL 104243 (11th Cir. Jan. 11, 2022).  In this type of case, the causation inquiry requires a showing of both general causation and specific causation supported by qualified and reliable expert testimony.[7]  *See McClain*, 401 F.3d at 1239.

Expert testimony is evaluated under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702.  Rule 702 requires sufficient facts, specialized knowledge that will help the jury understand a fact in issue, and scientific principles and methods reliably applied.  *See* Fed. R. Evid. 702.  The court acts as gatekeeper by evaluating an expert's qualifications, the reliability of methods used, and the helpfulness of the testimony, which must be established by a preponderance of the evidence.  *See Daubert*, 509 U.S. at 597 (Rule 702 "assigns the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"); *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1312–13 (11th Cir. 2014) (citing *Daubert*, 509 U.S. at 592 n.10, requiring "a preponderance of proof").

Plaintiffs raise several objections, arguing mostly that the Magistrate Judge

---

[7] This is a second category case under *McClain*, requiring proof of both general and specific causation because "the medical community does not generally recognize the agent as both toxic and causing the injury plaintiff alleges," *McClain*, 401 F.3d at 1239, and Plaintiffs do not argue otherwise in their objections.

applied improper legal standards and imposed a heightened burden on Plaintiffs' experts or that she improperly weighed the evidence for "correctness" as opposed to reliability of the methodology. The Court has carefully considered the R&R and the Plaintiffs' objections under *de novo* review and concludes that the R&R is correct as a matter of law and due to be adopted. The Magistrate Judge applied well-settled principles of law as set forth by the Eleventh Circuit and engaged in an extensive and detailed *Daubert* review. She painstakingly considered the studies the experts relied on and identified weaknesses and limitations the experts failed to address when discussing the studies or failed to explain or refute in their Bradford Hill evaluations. The Magistrate Judge noted that Plaintiffs cited no studies of *chronic* dermatitis and concluded that the studies of *acute* skin irritation symptoms in humans or animals cannot reliably support the conclusion that an association exists between the oil spill exposure and *chronic* dermatitis or eczema absent further explanation, "particularly where the exposure has long since ended."[8] ECF No 112 at 27. As noted by the Magistrate Judge, neither expert attempted to explain under what circumstances, and with what frequency, skin irritation from exposure to oil or dispersants develops into chronic dermatitis. The Magistrate Judge also identified a fatal flaw in that neither expert identified a harmful threshold dose/exposure that can

---

[8] The latest exposure among these Plaintiffs occurred in August 2012.

cause *chronic* dermatitis and eczema.

To comment briefly on the objections, Plaintiffs' argument that there are strong epidemiological studies showing a statistically significant association is rejected because, consistent with the Magistrate Judge's thorough analysis, the epidemiological evidence only addresses *acute* dermal outcomes.  Thus, the association identified does not involve the injury the Plaintiffs allege, and again there was no effort to reliably explain why an association between exposure and an acute symptom is—from a scientific standpoint—the same as an association between the exposure and a chronic disease.  Plaintiffs' experts state in their reports that the connection between the acute condition and the chronic condition is "well-recognized" or makes "common sense," without citing scientific support.  In rebuttal reports, they cite only to the declarations of Dr. Michael Harbut and Dr. Jessica Herzstein, which were submitted during negotiations to endorse the Settlement Agreement, to close this gap.  The undersigned has previously rejected reliance on the settlement declarations and sees no reason to revisit the matter.[9]  An expert's

---

[9] The declarations do not evidence a reliable methodology, and this Court previously stated:

> The settlement declarations confirmed that the Matrix was consistent with science for purposes of achieving a settlement but the opinions were general in nature, were not issued for purposes of proof in an adversarial setting, and were never subject to a *Daubert* challenge. *Importantly, the declarations were based on assumptions that the plaintiffs were exposed to sufficiently high levels of toxins.* Also, those experts did not identify a generally accepted level at which any particular substance associated with the Deepwater Horizon spill was likely to

statement that something is "common sense" or "generally accepted" without scientific support or a meaningful explanation, amounts to pure *ipse dixit*. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1314 (11th Cir. 1999) (warning "against leaping from an accepted scientific premise to an unsupported one").

Plaintiffs also argue that experts using epidemiology are not required to show a harmful threshold dose/exposure or to establish dose response beyond what is inherent in the epidemiological study itself, and that the Magistrate Judge thus required too strict a legal standard. This is incorrect. First, epidemiology requires some consideration of dose response within the studies but also expressly requires it as part of the expert's Bradford Hill analysis to support a causal inference, and, as the Magistrate Judge determined, that was not done here. Regarding the "12 days of work" standard offered by Dr. Freeman, this is not a useful benchmark because it included no quantification of chemicals or amounts that could cause harm. An

---

       increase the incidence of a specific medical condition. Therefore, the declarations
       do not represent a reliable expert opinion for purposes of establishing general
       causation in this case.

*In re Deepwater Horizon Belo Cases*, 2020 WL 6689212, at *9 (emphasis added). Additionally, Drs. Harbut and Herzstein are not designated experts in this case, and, as the Magistrate Judge noted, if the declarations are cited as a source, then Dr. Elsner and Dr. Freeman should have discussed why they constitute reliable evidence to support their opinions. They did not.

expert must have reliably applied at least one primary methodology. *See Chapman*, 766 F.3d at 1308. Because epidemiology was not reliably applied, the absence of a harmful threshold dose/exposure is significant here even if, as Plaintiffs argue, it would only be *required* for an expert applying a dose-response methodology. Moreover, it is beyond dispute that this standard must be met by Plaintiffs to ultimately prove their case, and the undersigned agrees with the Magistrate Judge that settled law in this Circuit requires it as part of general causation. In toxic tort cases, "knowledge of the harmful level of exposure" to humans generally is a minimal fact that a plaintiff must prove. *McClain*, 401 F. 3d at 1241. "The expert who avoids or neglects this principle of toxic torts without justification casts suspicion on the reliability of his methodology." *Id.* at 1242; *see also Pinares v. Raytheon Techs. Corp.*, No. 19-14831, 2023 WL 2661521, at *2 (11th Cir. Mar. 28, 2023)[10] (affirming the exclusion of expert testimony where the "general causation experts, and the articles upon which they relied, didn't determine 'how much' of the substance needed to 'be used for how long' to cause harm"). The objection is overruled.

Plaintiffs also argue that a lesser "featherweight" causation standard applies

---

[10] The Eleventh Circuit's Rules provide: "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36–2.

Page 11 of 13

under maritime law, and they seek to extend it as well to the *Daubert* review, citing *Davis v. Hill Eng'g, Inc.*, 549 F.2d 314, 331 (5th Cir. 1977).[11]  The undersigned finds that standard inapplicable here.  The "featherweight" causation standard applied in *Davis* is a maritime rule that applies when an injured seaman seeks recovery from his employer under the Jones Act, which is not at issue in this case.[12]  In the maritime tort context—outside of the Jones Act—as here, a plaintiff bears the burden to prove that the defendant's negligence was a "substantial factor in bringing about the harm." *Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968, 984 (5th Cir. 1978); *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978); *see also McClow v. Warrior & Gulf Nav. Co.*, 842 F.2d 1250, 1251 (11th Cir. 1988) (declining to apply "the lesser Jones Act standard of causation to general maritime law claims").  Plaintiffs provide no authority for their suggestion/argument that applying a "featherweight" causation standard in these toxic tort cases or using it to

---

[11] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting the case law of the former Fifth Circuit before October 1, 1981, as precedent in this Circuit).

[12] The Jones Act accords to seamen "heightened legal protections (unavailable to other maritime workers)," *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995), and these protections include the right "to recover on a Jones Act claim with a lower showing of proximate cause than would be required in a non-admiralty case." *Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1542 (11th Cir. 1989).  This lighter "slight negligence," *id.*, or "featherweight" burden as described in *Davis*, 549 F.2d at 331, also has been applied in the general maritime context but only in situations where *res ipsa loquitur*-based negligence allows the jury to make permissible inferences from unexplained maritime events.  *See Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975) (citing *Johnson v. United States*, 333 U.S. 46, 48 (1948)).  However, *res ipsa loquitur*-based negligence has not been pled and is not at issue in this case.

mitigate the necessity to support their claims with reliable expert testimony or for the Court to conduct a careful *Daubert* review.

Plaintiffs' argument that the Magistrate Judge inappropriately required "undeniable" proof of causation lacks any support and is completely without merit. All other objections also have been considered *de novo* and are rejected for reasons stated in the R&R. In sum, the undersigned agrees with the Magistrate Judge's thorough analysis and adopts R&R and incorporates it herein by reference.

Accordingly, it is now ORDERED as follows:

1. The objections are **OVERRULED** and the Magistrate Judge's Report and Recommendation (ECF No. 733) is **ADOPTED** and incorporated by reference in this Order.

2. BP's motion to exclude Dr. Elsner (ECF No. 686) is **GRANTED**.

3. BP's motion to exclude Dr. Freeman (ECF No. 687) is **GRANTED**.

4. BP's motion to strike (ECF No. 704) is **GRANTED** only to the extent that the Settlement Agreement from the MDL, and the declarations submitted in support thereof, do not establish general causation.

5. Plaintiffs' motions to exclude BP's experts (ECF Nos. 689, 690, 691, & 692) are **DENIED AS MOOT**.

6.    BP's motion to strike improper expert reports filed as exhibits to Plaintiffs' reply memoranda (ECF No. 722) is **DENIED AS MOOT**.

7.    BP's motion for summary judgment (ECF No. 688) is **GRANTED.**

8.    BP's motion to strike expert declarations filed with Plaintiff's Objections (ECF No 740), is **GRANTED** consistent with this Order.

9.    The Clerk is directed to file a copy of this Order on the Master Docket, and in each of the above-named individual cases, terminate all pending motions, enter judgment in favor of BP, tax costs against Plaintiffs, and close the files.

**DONE AND ORDERED** this 30th day of September 2024.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**